### The Union National Bank of Chicago

*v.*

### Augustus Byram.

*Filed at Springfield October 31, 1889.*

1. ATTACHMENT—*what subject thereto—generally.* Whatever is the proper subject of seizure and sale on execution, may be taken in a proceeding by attachment, and held subject to sale under the judgment that may be recovered.

2. SAME—*shares of stock in corporation—the statute construed.* Shares of stock in an incorporated company are subject to attachment under

the laws of this State. In case the shares have been attached, the purchaser at the sheriff's sale on execution will be entitled to all the dividends accruing after the attachment.

3. Section 8 of the Attachment act, providing that the "officer shall, without delay, execute such writ of attachment upon the lands, tenements, goods, chattels, rights, moneys and effects of the debtor," is to receive a liberal construction, and its words are broad enough to include the interest of a stockholder in a corporation.

4. The words "rights" and "effects" in that section may be held to embrace within the scope of their signification the shares of a stockholder in an incorporated company. The word "rights," as used in section 8, refers to some kind of property interest which is incorporeal in its character, and not to that species of property which is capable of being actually and corporeally seized by the sheriff. Shares of stock are also embraced in the word "effects," as used in the statute.

5. SAME—*pleading and practice—the statute construed.* Section 26 of the Practice act provides, that "the practice and pleadings in attachment suits, except as otherwise provided, * * * shall conform, as near as may be, to the practice and pleadings in other suits at law." The word "practice," as here used, includes the mode of serving *mesne* process and the mode of executing final process. It refers to the manner in which an attachment writ is to be levied, and also to the manner in which an execution is to be levied.

6. SAME—*levy of attachment—the object.* The object of the attachment of personal property is to seize and hold it until judgment is rendered, so that it may be taken and sold under execution for the satisfaction of the judgment.

7. SAME—*mode of levying—generally.* A levy, which is defined to be a seizure, is essentially the same, whether made under a writ of attachment or on execution. The act necessary to a valid levy of the one is equally essential to the levy of the other.

8. SAME—*mode of levying on shares of stock.* Under sections 8 and 26 of the Attachment act, the seizure to be made under an attachment writ must conform, as near as may be, with the seizure of the same species of property under an execution. The share or interest of a debtor in an incorporated company may be levied upon or seized under a writ of attachment, by leaving an attested copy of the writ with the officer of the corporation designated in section 53 of the act relating to judgments, etc.

9. SAME—*and herein, of levy and sale on execution—general and special—the statute considered.* The mode of proceeding under execution in levying upon shares of stock in incorporated companies, depends upon the fact whether an attachment has already been levied upon the same. The attested copy of the execution is not required to be left with the officer named, if the stock has already been attached in the suit.

10.   The word "seizing," as used in section 54 of the statute relating to judgments and executions, refers to the exhibition of the execution by the sheriff to the officer of the company who keeps a record of the shares of the stockholders, so as to obtain a certificate of the shares of the judgment debtor, as provided in section 55 of the same act.

11.   As the Attachment act, approved December 23, 1871, and the act in relation to judgments and executions, approved March 22, 1872, went into effect on the same day, July 1, 1872, it is proper to consider them together in order to determine their meaning.

12.   Section 52 of the act relating to judgments and executions, which provides that shares of stock may be taken on execution, is broad enough to include special executions under the Attachment act. The execution mentioned in section 54 may be a special one for the seizure and sale required to be made under it, of stock attached.

13.   CORPORATIONS—*rights of a shareholder.* The rights of a shareholder in a private incorporated company are rights of contract, or, in technical language, choses in action. Such a right is an equitable right to have the entire property managed in accordance with the charter, and, after the dissolution of the company, to have the assets reduced to cash, and distributed.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Messrs. TENNEY, DRIGGS & HAWLEY, for the appellant:

Section 52, chapter 77, of the Revised Statutes, provides, that "the share or interest of a stockholder in any corporation may be taken on execution." Section 53 describes how the levy shall be made "if the property has not already been attached in the same suit," and the next section, how it shall be sold if it has been "already attached in the same suit." Section 57 provides that if the stock has been attached in the same suit, the purchaser shall be entitled to all the dividends accruing after the attachment. These various provisions are to be construed together, so as to effectuate, rather than defeat, the legislative intent.

In construing a statute, whether remedial or otherwise, every sentence and word in the law is to be given its appropriate effect, and nothing is to be rejected, except for the strongest

reason. The statute, though in derogation of the common law, is not one to be strictly construed. *Railroad Co.* v. *Dunn,* 52 Ill. 260.

The first section of the Attachment act provides, that in certain contingencies a creditor may have an attachment against "the property" of his debtor. Section 8 authorizes a levy on "the lands, tenements, goods, chattels, rights, credits, moneys or effects of the debtor," etc. These expressions include every form of property known to the law, both those which were subject to execution at common law, and those which were not. While stock does not come within the technical meaning of the word "chattels," at common law, it is certainly a "right," "credit" or "effect." 1 Shouler on Personal Prop. sec. 16; 1 Bouvier's Law Dic. 517; *People* v. *Manf. Co.* 99 Ill. 365.

The word "property," as used in the act, includes money, debts, and choses in action of every kind, as well as things that are visible and tangible. *Stahl* v. *Webster,* 11 Ill. 511.

In *Newhall* v. *Buckingham,* 14 Ill. 405, it is held, that "under our statute, whatever is the subject matter of seizure and sale on execution, may be taken in the proceeding by attachment."

Messrs. GREGORY, BOOTH & HARLAN, for the appellee:

Choses in action, and all other intangible property, are not liable to be taken on execution at common law. Byles on Bills, 139; Freeman on Executions, sec. 112.

Nor could shares of stock in an incorporated company be taken on execution at common law. Freeman on Executions, sec. 348; Angell and Ames on Corp. secs. 588, 589; *Howe* v. *Starkweather,* 17 Mass. 243; *Denton* v. *Livingston,* 9 Johns. 99.

The statute (chap. 77, secs. 41, 42,) making shares of stock liable to execution sale, provides that the sheriff shall give to the officer in charge of the books of the company, an attested copy of the writ; that the property shall then be considered as seized; that the officer in charge of the books shall give to the sheriff a certificate of the number of shares standing on

the books in the name of the judgment debtor, and that if he refuses to do so, or gives a false certificate, he shall be liable in double the amount of damages occasioned to the creditor by such refusal or false certificate; that the sheriff may sell such shares in the same manner as goods and chattels are sold; that an attested copy of the execution, and the return thereon, shall be left with the proper officer of the corporation within fifteen days, and that thereupon the purchaser shall be entitled to a certificate for the shares bought by him, upon paying the fees therefor, and for the recording thereof, etc. Rev. Stat. chap. 77, secs. 52-57.

An attachment being a harsh remedy, and in derogation of the common law, the rule of strict construction applies. *Buckley* v. *Lowry*, 2 Mich. 419; *Moore* v. *Hamilton*, 2 Gilm. 429; *Haywood* v. *Collins*, 60 Ill. 333.

Shares of stock can not properly be classed under any of the heads mentioned in section 8 of the Attachment act. All such property, except, perhaps, credits, is capable of being actually seized. A franchise is a right, but it is vested in the corporation, and not in the shareholders.

A careful reading of the act on attachment will show that the intention of the act is, that all property liable to be attached shall be actually and corporeally seized by the officer. Section 14 provides as follows: "The officer serving the writ shall take and retain the custody and possession of the property attached, to answer and abide by the judgment of the court." The only exception to this rule is in the case of real property. In such case it is provided by section 9, that the officer may file a certificate of the levy with the recorder, and thereupon the levy shall take effect.

If, therefore, the statute provides a way of attaching the property of the debtor,—that is, by actual and corporeal seizure,—it is clear that no other method, whatever its nature, can be lawful. In statutory remedies the statute must be strictly pursued. The officer will not be allowed to invent a method

of procedure of his own in any case, and especially when the statute itself has prescribed a method. In this case, the statute expressly provides that the officer shall take and retain the custody and possession of the property attached, and this provision he must follow, else there can be no valid attachment.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an attachment suit brought in the Superior Court of Cook County on October 18, 1888, by the appellant against Nathan Corwith and Nathan Corwith Jr. The sheriff levied the writ upon a large amount of property, and, among other things, upon ninety one shares of stock in the Chicago Dock Company, a corporation organized under the laws of Illinois. The return of the Sheriff shows that he delivered an attested copy of the attachment writ to the secretary of the company, an officer in charge of its books and papers. The appellee filed an interpleader claiming to own the stock, alleging that said stock was not subject to attachment, and asking that the levy be set aside and vacated. Appellant filed its answer to the interpleader, traversing the allegations thereof. Afterwards appellee moved to set aside the levy of the writ, so far as it affected the shares of stock, on the ground that stock in a corporation is not liable to be attached under our statute. This motion was sustained, and an order was entered quashing the levy and giving judgment against appellant for costs. This order has been affirmed by the Appellate Court, and from such judgment of affirmance an appeal is taken to this Court.

The only question, which the record presents for our consideration, is this : are shares of stock in an incorporated company subject to attachment under the laws of this State?

Section 52 of chapter 77 of the Rev. Stat., being "An Act in regard to judgments and decrees," etc., (Starr & C. Ann. Stat. page 1410), provides that "the share or interest of a stockholder in any corporation may be taken on execution and sold as hereinafter provided."

7—131 ILL.

Section 53 of the same Act is as follows : "*If the property has not been attached in the same suit,* the officer shall leave an attested copy of the execution with the clerk, treasurer or cashier of the company if there is any such officer, otherwise with any officer or person having the custody of the books and papers of the corporation; and the property shall be considered as seized on execution when the copy is so left, and shall be sold in like manner as goods and chattels." Section 54 is as follows : "*If the share is already attached in the same suit,* the officer shall proceed in seizing and selling it in the same manner as in selling goods and chattels." Section 57 is as follows : "If the shares or interest of the judgment debtor *had been attached in the suit* in which the execution issued, the purchaser shall be entitled to all the dividends which have accrued *after the attachment.*"

The language of sections 53, 54 and 57 plainly indicates, that the Legislature intended to subject to attachment the same shares of stock which were liable to be taken on execution. The method of proceeding under the execution is made to depend upon the question whether an attachment has or has not been issued and levied in the suit. The attested copy of the execution is only to be left with the officer named in section 53 in case the stock has not been attached. By the terms of section 54, such copy is not to be left after the issue of execution, if the stock has already been attached. In the latter case, the sheriff "shall proceed in seizing and selling" the stock.

The word "seizing," as used in section 54, refers to the exhibition of the execution by the sheriff to the officer of the company who keeps a record of the shares of the stockholders, so as to obtain a certificate of the shares of the judgment debtor, as provided in section 55. In *The People ex rel.* v. *Manf. Co. et al.* 99 Ill. 355, it was said : "it is provided in section 53 that when the officer holding the execution has delivered to a proper officer of the corporation an attested copy of

the execution, the property 'shall be *considered as seized* on execution'; and this although it has not yet been *actually seized,* as it must be before sale by means of the provisions contained in section 55; and thus a constructive levy may be accomplished before the *actual seizure*—before the sheriff comes into possession of the certificate mentioned in that section." Why does section 54 dispense with the *constructive* seizure mentioned in section 53, and provide only for the *actual* seizure specified in section 55? Because the share is "already attached" in the same suit.

It is claimed that the Attachment Act, and the Act in regard to judgments and executions, contain no provision that stock shall be subject to attachment, and that, if they do contain such provision, they provide no mode of levying an attachment upon stock. We think that an examination of the two Acts will show this claim to be unfounded.

The Attachment Act (chap. 2 of Rev. Stat. Starr & C. page 308), and the Act in regard to judgments, etc., went into effect on the same day, July 1, 1872, the former having been approved December 23, 1871, and the latter on March 22, 1872. It is proper, therefore, to construe them together in order to determine their meaning.

Section 8 of the Attachment Act provides, that the "officer shall without delay execute such writ of attachment upon the lands, tenements, goods, chattels, rights, credits, moneys and effects of the debtor, or upon any lands," etc. This provision, as well as the other provisions hereafter referred to, should receive a liberal construction. (*First National Bank of Chicago* v. *Hanchett,* 126 Ill. 499; *H. & St. J. R. R. Co.* v. *Crane,* 102 id. 249.) Its words are comprehensive enough to include the interest of a stockholder in a corporation.

It will not be questioned that an attachment may be levied upon personal property. Section 7 of the general Incorporation Act of this State provides that "the shares of stock * * * shall be deemed personal property." Morawetz on Private

Corporations, says: "In most of the States it is provided by general law that shares in a corporation shall be treated as personal property. * * * They have been ·held *to* be "personal property" subject to tax laws, and to pass as personal property under a will." (Secs. 224, 225). While shares, independently of the certificates of shares, cannot be considered as either goods, wares or merchandise within the meaning of the statute of frauds,. yet certificates of shares may be considered goods and merchandise within the meaning of that statute. (Id. sec. 226).

The words "rights" and "effects" can certainly be held to embrace within the scope of their signification the shares of a stockholder in an incorporated company. The rights of a shareholder are rights of contract, or, in technical language, choses in action; such a right is "an *equitable right* to have the entire property managed in accordance with the charter, and, after the dissolution of the company, to have the assets reduced to cash and distributed." (1 Morawetz on Priv. Corp. secs. 224, 225, 200). In *The People ex rel.* v. *Manf. Co. et al. supra,* we said: "The property of a stockholder consists of his *right* to a share in the net assets of the corporation, proportionate to the number of shares to which he has title." Bouvier defines a right as "a well founded claim." Whatever may be the correct definition of the word, "rights," as used in section 8, it refers to some kind of property interest, which is incorporeal in its character, and not to that species of property which is capable of being actually and corporeally seized by the sheriff.

"Effects" are defined to be "property or worldly substance," and as denoting "property in a more extensive sense than goods." (1 Bouvier's Law Dic. 517; 1 Shouler's Pers. Prop. sec. 16). A share of stock cannot be regarded otherwise than as "property," nor can it be said that it is not "worldly substance."

By the use of the word, "attached," in sections 53, 54 and 55, as above quoted, the legislature assumed that provision had already been made for attaching shares of stock. It will not be presumed that this assumption was a mistaken one, unless it clearly appears to be so. When section 8 of the Attachment Act, making use of terms which are broad enough to embrace shares of stock, is carefully studied in connection with said sections 53, 54 and 55, it is evident that the latter sections refer back to said section 8 and point to it as the provision for attaching corporate stock which is assumed to exist. Nearly twenty years before July 1, 1872, this Court had said, in *Newhall et al.* v. *Buckingham,* 14 Ill. 405 : "Under our statute, whatever is the subject matter of seizure and sale on execution, may be taken in the proceeding by attachment, and held subject to sale on the judgment that may be recovered." There is no such difference between the statute now in force and the statute of 1845 which was in force when the *Newhall* case was decided, as would make the statement in the quotation any the less true now than it was then.

The objection that the statute provides no mode of levying the writ of attachment will also disappear upon a comparison of the Attachment Act with the Act in regard to Judgments and Executions.

Section 26 of the Attachment Act provides that "the practice and pleadings in attachment suits, except as otherwise provided in this Act, shall conform, as near as may be, to the practice and pleadings in other suits at law." The word practice as here used includes the mode of serving mesne process and the mode of executing final process ; it refers to the manner in which an attachment writ is to be levied, and also to the manner in which a writ of fi. fa. or an execution is to be levied. (*Fleischman* v. *Walker,* 91 Ill. 318).

The word, "levy," is applied to attachment writs as well to executions. An attachment writ is levied upon personal property in the same way in which an execution is levied thereon.

A levy is defined by Bouvier to be a "seizure," and it is no less a seizure when made under an attachment than when made under an execution. The seizure is made in the same way under the one as under the other. The acts necessary to a valid levy of an attachment are equally essential to the valid levy of an execution (2 Freeman on Executions, sec. 262, (2d ed.)), and the converse of the proposition is also true.

The object of the attachment of personal property is to seize and hold it until judgment is rendered, so that it may be taken and sold under execution. The object of levying an execution upon personal property is to seize and sell it, so as to make out of it the amount recovered by the judgment.

Sections 8 and 26 of the Attachment Act can be fairly construed to mean, that the seizure to be made, under the attachment writ, of the goods, chattels, rights, credits, moneys and effects of the debtor named in section 8, shall conform as near as may be, in the method of effecting it, to the seizure of the same species of property under an execution issued in other suits at law. Section 53 of the Act in regard to Judgments, etc., provides, that the share or interest of a stockholder shall be considered as seized on execution, when an attested copy of the execution is left with the officer named in that section. So, such share or interest will be considered as seized under a writ of attachment, when an attested copy of the writ of attachment is left with the officer designated in section 53. We have seen that the statute can be so construed as to authorize an attachment of corporate stock, as well as its seizure under an execution; this being so, it necessarily follows that, under the provisions of the two Acts, the method of levying the attachment on the stock will be the same as that of levying the execution thereon.

This construction receives indorsement from the language of section 54 already commented upon. By the terms of section 54 the sheriff may omit to leave an attested copy of the execution with an officer of the company, as directed in sec-

tion 53, "if the share is already attached in the same suit." Why? Because, when the share was attached, an attested copy of the attachment writ was *then* left with such officer. It was unnecessary to require a repetition of what had already been done. The leaving of an attested copy was necessary to effect a preliminary seizure of the stock, until the final seizure and sale subsequently provided for should be effected. Why authorize the leaving of the copy to be omitted, if such preliminary seizure had not already been accomplished by the attachment of the stock? The words, "already attached," clearly indicate that what was required to be done by section 53 had already been done.

Section 52 provides that "the share * * * may be taken on execution." The word "execution" is broad enough to include a special execution under the Attachment Act. Section 35 of the latter Act provides that, where the defendant is not served and does not appear, but is notified by publication, default may be taken and final judgment entered, "and a *special execution* shall issue against the property, credits and effects attached." If, under section 52, the stock may be taken on such a special execution, then an attachment of the stock is necessarily authorized, because the special execution is only against property already attached. That section 52 was intended to embrace special executions, is apparent from the language of section 54. The execution mentioned in section 54 may be a special one, because the seizure and sale required to be made under it are of stock which has already been attached.

For the reasons here stated, we think that the Superior Court erred in setting aside and quashing the levy of the attachment writ and giving judgment against appellant.

The judgments of the Superior and Appellate Courts are reversed and the cause is remanded to the Circuit Court.

*Judgment reversed.*