## C. C. Binkley v. John Clay, Jr., Charles O. Robinson and William H. Forrest, co-partners, etc.

### Gen. No. 10,945.

1. GARNISHMENT—*when issue in, should be decided against garnishee.* Where a garnishee, just prior to the service of the writ upon it, had money in its possession belonging to the debtor, and had, just prior to such service, drawn its check for such amount and delivered it to its bank with a request for a draft for the amount thereof and for delivery of such draft to a certain bank, being the Chicago correspondent of a foreign bank to whom remittance had been requested by the debtor, and where the garnishee had ample time after the service of such writ to have stopped delivery of such draft to such Chicago correspondent, then the issue in garnishment should have been decided adversely to the garnishee.

2. GARNISHEE—*duty of.* It is the duty of a garnishee who has money or other property subject to garnishment in his hands or within his control at the time of the service of the writ upon him, to exercise reasonable diligence to prevent the payment of such money or the delivery of such property to such debtor by any agent of his.

Action of debt with attachment in aid. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed March 1, 1904. Rehearing denied March 25, 1904.

**Statement by the Court.** July 14, 1898, appellant brought in the Circuit Court an action of debt against Andrew Marr and sued out a writ of attachment in aid of his suit which was served upon appellees as garnishees. The issues joined between the plaintiff and the garnishees were submitted to the court upon an agreed statement of facts. The Circuit Court found the issues for the garnishees, and from the judgment discharging them, plaintiff appealed.

Marr lived at Corwith, Iowa. June 12, 1898, he shipped to the garnishees, commission merchants at the Union Stock Yards, cattle to be sold and requested them to remit the proceeds to the First State Bank of Corwith, Iowa. June 13, the garnishees sold the cattle and after deducting their charges " there was a balance of $2,180.46 belonging to

said Andrew Marr." The Continental National Bank was the Chicago correspondent of the Corwith bank. The net proceeds of the sale of all the cattle sold by the garnishees on June 13 amounted to $16,247.87. Between ten and eleven o'clock A. M. June 14, the garnishees deposited in the National Live Stock Bank at the Union Stock Yards, their check on said bank for $16,247.87, payable to "the order of deposit," and requested the bank to draw three drafts in favor of certain Chicago banks and to direct said banks to remit certain amounts to the credit of the shippers of the cattle in different country banks. One of said drafts for $5,187.45, was in favor of the Continental National Bank, the Chicago correspondent of the Corwith bank. With this draft the garnishees requested the Live Stock Bank to send to the Continental Bank the following notice :

"UNION STOCK YARDS, Chicago,  6–13, 1898.

*To Continental Nat. Bank of Chicago :*

DEAR SIR :—We hand you herewith $2,180.46. You will please place to the credit of the First State Bank of Corwith, Iowa.

A. MARR,

By Clay, Robinson & Co., Agts."

It was further stipulated that "service of the attachment writ herein was had upon the garnishees at 11 : 50 o'clock on the morning of June 14, A. D. 1898, at their down town office in the Rookery Building, Chicago, Illinois; that the National Live Stock Bank of Chicago after 2 o'clock on the afternoon of June 14th, A. D. 1898, and before the closing of the bank for the day, made out the draft in favor of the Continental National Bank, Chicago, and forwarded it by special messenger the following morning, June 15, 1898, with the notice above set out to said Continental National Bank at Chicago, and which said draft with notice attached was received by said Continental National Bank from such messenger on the morning of the 15th of June, A. D. 1898, at about 10 o'clock.

" That the Continental National Bank on the 15th day of June, A. D. 1898, remitted to the First State Bank of

Corwith, Iowa, for the account of Andrew Marr, the said sum of $2,180.46, and the same was placed to the credit of Andrew Marr by said First State Bank of Corwith, Iowa, on the 16th day of June, A. D. 1898.

" That the National Live Stock Bank at the Union Stock Yards is in the same building in which the garnishees, Clay, Robinson & Company, have their Stock Yards Office, and had such office on June 14, 1898; that after the service of said writ of attachment in this cause said garnishees, Clay, Robinson & Company, made no effort to stop said money and proceeds of said cattle from getting out of the posses- sion of said National Live Stock Bank and into the posses- sion and control of said defendant Andrew Marr."

ALDEN, LATHAM & YOUNG, for appellant.

GEORGE V. MCINTYRE, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The only direction that Marr gave to the garnishees as to the disposition of the proceeds of the sale of his cattle was, that they should remit the same to the Corwith bank.    This left it to the garnishees to determine how, by what means, and through what agencies such proceeds should be remitted. It does not appear that they had been paid for Marr's cat- tle when at 11 : 50 A. M. June 13, they deposited in the Live Stock Bank their check for $16,247.50, payable in effect to the bank, but only that this check "covered moneys due and owing by Clay, Robinson & Co. (the garnishees) for the sales of cattle made June 13."

We will assume without expressly deciding the point, that the Continental Bank, from the mere fact that it was the Chicago correspondent of the Corwith bank, was au- thorized to receive money for the Corwith bank either for remittance or credit.    But with such assumption can it be said that the delivery of this check with the accompanying directions and requests to the Live Stock Bank effected or amounted to a transfer of the proceeds of the sale of Marr's cattle to the Corwith bank?    Suppose that in place of em-

ploying the agency of the Live Stock Bank in effecting the remittance of the proceeds of Marr's cattle to the Corwith bank, the garnishees had drawn a check for $2,180.46, the amount of such proceeds, on the Live Stock Bank, and sent their cashier or messenger to that bank with directions therewith to purchase a draft in favor of the Continental Bank for that sum and take such draft to the Continental Bank and have that bank place the amount thereof to the credit of the Corwith bank; could any one doubt that up to the time of the delivery of the draft in favor of the Continental Bank to that bank the fund arising from the sale of Marr's cattle would remain in the possession and under the control of the garnishees? In the case under consideration, in place of the plan above supposed, the garnishees deposited with the Live Stock Bank their check for $16,247.87, for which they requested that bank to draw, and the bank did draw three drafts amounting in the aggregate to that sum, one of which for $5,187.45 was in favor of the Continental Bank, and this draft the garnishees requested the Live Stock Bank to send to the Continental Bank with a request in writing, signed Andrew Marr, by the garnishees as his agents, to the Continental Bank to place $2,180.46 of the proceeds of said draft to the credit of the Corwith bank. The deposit by the garnishees of their check for $16,247.87 payable "to deposit" in the Live Stock Bank did not transfer the funds arising from the sale of Marr's cattle to the Live Stock Bank, for that check was used to buy drafts in favor of certain banks for the amount of the check, and the drafts so purchased took the place of the check. Nor did the mere drawing by the Live Stock Bank in favor of the Continental Bank of the draft for $5,187.45 transfer money or credits to that amount to the Continental Bank from the Live Stock Bank or from the garnishees through the Live Stock Bank. Such transfer was effected only when the draft in favor of the Continental Bank passed from the possession and control of the Live Stock Bank, and that did not occur until ten o'clock of the morning of June 15, when the messenger of the Live Stock Bank de-

livered said draft with the accompanying requests to the Continental Bank. Up to that time the fund arising from the sale of Marr's cattle remained due from or in the possession, or under the control of the garnishees, for the possession of the Live Stock Bank, the agent of the garnishees, was the possession of the garnishees.

It is no doubt true that when at the time of the service of the writ upon a garnishee, the latter owes the debtor money or has property, effects, choses in action or credits of the debtor in his possession, and without fault or neglect on his part, the money is paid, or property delivered to the debtor by an agent of the garnishee, such payment or transfer is valid as against the garnishing plaintiff. But the garnishee is bound to use reasonable diligence to prevent such payment by his agent and if he fails to do so, he will be held liable. In Farrell v. Pearson, 26 Ill. 463, Farrell was served with garnishee process in Chicago and it was claimed that he had in his possession at Tamaroa, in Perry county, property belonging to the debtors Clark and Study. This property Farrell claimed was delivered to the debtors by the clerk of Farrell before such clerk knew that Farrell had been served with process. The court gave this instruction for the plaintiffs: "If the jury believe from the evidence that at the time of the service of process of garnishment on Farrell in Chicago, he was in possession of property belonging to the defendants Clark and Study, that such property was then at Tamaroa, in Perry county, Illinois, and was subsequent to such service redelivered to the defendants Clark and Study, by the agent of Farrell, but that such redelivery did not take place until the lapse of more than a reasonable time from the service of such garnishee in which notice thereof might have been communicated by Farrell to his agent at Tamaroa, then the jury should find for the plaintiffs," etc. There was a verdict and judgment for the plaintiffs and the garnishee appealed. The judgment was affirmed and in the opinion Judge Breese said, "The instructions given by the court were all proper." To the same effect are Bates v. C., M. & St. P. R. R. Co., 60 Wis. 296; Spooner v. Rowland, 4

Allen, 485; Bank of Montreal v. Clark, 108 Ill. App. 163. In the latter case the payment could not have been prevented by notice sent by mail after the garnishee was served but might have been prevented by telegraph, and the court held that the garnishee did not use reasonable diligence and was therefore liable.

The writ of attachment in this case was served upon the garnishees before twelve o'clock noon of June 14, more than two hours before the draft on the Continental Bank was drawn by the Live Stock Bank and more than twenty-two hours before that draft passed from the possession of the Live Stock Bank by its delivery by the messenger of that bank to the Continental Bank. The Live Stock Bank and the Stock Yards office of the garnishees were in the same building and it is stated in the stipulation of facts that the garnishees after the service of the writ "made no effort to stop said money and proceeds from getting out of the possession of said National Live Stock Bank, and into possession and control of the defendant Marr."

No question as to rights of third persons to the funds is involved in this case for it is stipulated that the Continental Bank, on June 15, remitted said $2,180.46 to the Corwith bank and that the Corwith bank on June 16, placed the same to the credit of Marr. In our opinion the garnishees did not exercise reasonable diligence to prevent the transfer of said fund by their agent to the debtor, Marr, after they were served with process, but were guilty of negligence in that behalf; and it was through and by reason of this negligence that the proceeds of the sale of Marr's cattle which were in their possession, subject to garnishment when the writ was served upon them, were afterwards paid or transferred to the debtor; and therefore the finding and judgment of the Circuit Court should have been against and not in favor of the garnishees.

The judgment will be reversed, but as the record contains no evidence upon which we can here enter a judgment against Marr, the cause must be remanded.

*Reversed and remanded.*