L. R. Alexander for the use of Tobey Furniture Company, Appellant, v. The Live Stock National Bank of Chicago, Appellee.

Gen. No. 38,196.

316

MATCHETT, J., dissenting.

Opinion filed November 12, 1935. Rehearing denied November 26, 1935.

MEYER SHAPIRO, of Chicago, for appellant.

WINSTON, STRAWN & SHAW, of Chicago, for appellee; JAMES H. CARTWRIGHT, GERARD E. GRASHORN and WILLIAM C. MULLIGAN, all of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal plaintiff seeks to reverse a judgment of the municipal court of Chicago which discharged The Live Stock National Bank of Chicago as garnishee.

The record discloses that on January 18, 1932, The Tobey Furniture Company caused judgment by confession to be entered against L. R. Alexander for $337.82. Afterward an execution was issued and returned by the bailiff no part satisfied. More than two years afterward, November 15, 1934, plaintiff filed an affidavit for a garnishee summons which was issued and served on The Live Stock National Bank; it filed

its answer in which it set up that it had no property in its possession belonging to Alexander. The answer was contested. The matter came on for hearing January 4, 1935; evidence was heard and thereupon a motion to discharge the garnishee was denied. The cause was then continued to January 25th. January 10th the garnishee by leave of court filed an amended answer. The hearing was then completed, the court found from the evidence and from the admissions of the garnishee that at the time of the service of the summons on the garnishee it had in its possession a certificate for 40 shares of stock of the Ever Ready Transit Company, an Illinois corporation, the certificate being in the name of the judgment debtor, Alexander, and indorsed by him in blank. The court further found that subsequent to the service of the summons on the garnishee it delivered the certificate for the 40 shares of stock back to Alexander. The court then found the issues against the garnishee and entered judgment against it for $404.19, being the amount of the judgment against Alexander with interest thereon. February 13th the garnishee's motion for a new trial was allowed, and it was stipulated that neither side had any other evidence to offer, and that the court might decide the case on the evidence theretofore adduced. Thereupon, the court found the issues in favor of the garnishee, it was discharged, and plaintiff appeals.

The substance of the facts as shown by the evidence, and which is not in dispute, is that at the time the garnishee bank was served with summons, for a considerable time prior thereto and for some time thereafter, the bank held certificates for 120 shares of the capital stock of the Ever Ready Transit Company, an Illinois corporation, which were indorsed in blank and held by the bank under an escrow agreement dated December 29, 1932, from which agreement it appears that in addition to the stock certificates the bank held

in escrow a promissory note for $2,000 signed by Alexander, due November 21, 1933, on which there was $500 still due. The agreement recited that upon production of satisfactory evidence of the payment of a note for $816, dated December 27, 1932, which was signed by Alexander and Charles L. Bingham, the bank was authorized to deliver the certificates of the 120 shares of stock, together with the $2,000 note to "Alexander and Charles L. Bingham"; that in the event of the failure of Alexander and Bingham to pay the note for $816, in accordance with the terms of a certain other agreement (which is not in the record) the bank was authorized to deliver the stock certificates and the $2,000 note to Bernhard H. Stephenson and Herman F. Frank, and the escrow agreement would be thereupon terminated. The escrow agreement was signed by Stephenson, Frank, Alexander and Bingham, and accepted by the garnishee bank.

The amended answer of the garnishee set up that the bank under the escrow agreement had in its possession "120 shares of stock of the Ever Ready Transit Company, an Illinois corporation, 40 shares of which was endorsed in blank by LeRoy D. Alexander" and deposited with the bank; that after the service of the garnishee summons on the bank the escrow agreement was terminated by the acts of the parties and the stock certificates for the 120 shares were delivered by the Bank to Alexander and Bingham, that the stock at the time of the service of the garnishee summons was of no value, was still of no value, and that the bank had no property in its possession belonging to Alexander.

A witness called by plaintiff testified that about November 20, 1934 (which was three days after the bank was served by the garnishee summons) he talked with a trust officer of the garnishee bank and was told by the officer that the bank still had the certificate of stock which Alexander had deposited with it. Another wit-

ness called by plaintiff testified that he was one of the original incorporators and stockholders of the Ever Ready Transit Company; that the par value of the shares was $50, and that at the time of the service of the garnishee summons he was of opinion the stock was worth $25 a share, or a total of $1,000 for the 40 shares. This evidence was objected to on the specific ground that there was no showing that the witness was qualified to place a value on the stock. The objection was overruled and the evidence admitted.

Plaintiff contends that shares of stock of an Illinois corporation owned by a judgment debtor and for which a certificate has been issued and is in the possession or custody of a third party, are subject to garnishee process. His counsel says that neither the Appellate nor the Supreme Court of this State "have ever decided this precise question squarely," and counsel for the garnishee agree with this statement but say that the question has been decided by the courts of many States, as well as by the Federal courts, and that in no case has such a method of attaching stock been held valid.

At common law a shareholder's interest in a corporation could not be taken under an execution; the proceeding is statutory. *Goss & Phillips Mfg. Co. v. People,* 4 Ill. App. 510. Section 1 of our Garnishment Act provides that upon the return of an execution "No property found," garnishment proceedings may be instituted where it is made to appear by affidavit that any person has "any effects or estate" of the judgment debtor in his possession, custody or charge. (Ill. State Bar Stats. 1935, p. 1729.) The word "effects" as used in sec. 8 of the Attachment Act has been defined by our Supreme Court to include shares of stock in a corporation; (*Union Nat. Bank of Chicago v. Byram,* 131 Ill. 92) and we hold that the word "ef-

fects'' in section 1 of our Garnishment Act is used in the same sense.

In the *Byram* case the sheriff levied a writ of attachment on certain shares of stock of an Illinois corporation. The court said (p. 97) : ''The only question which the record presents for our consideration is this: are shares of stock in an incorporated company subject to attachment under the laws of this State?

''Section 52 of chapter 77 of the Rev. Stat., being 'An Act in regard to judgments and decrees,' . . . provides that 'the shares or interest of a stockholder in any corporation may be taken on execution and sold as hereinafter provided.' ''

The court then analyzes and discusses other sections of that act and continuing says (p. 98) : ''The language of sections 53, 54 and 57 plainly indicates that the Legislature intended to subject to attachment the same shares of stock which were liable to be taken on execution.'' And continuing (p. 99) says: ''It is claimed that the Attachment act, and the act in regard to judgments and executions, contain no provision that stock shall be subject to attachment, and that, if they do contain such provision, they provide no mode of levying an attachment upon stock. We think that an examination of the two Acts will show this claim to be unfounded.''

The court then quotes from section 8 of the Attachment Act, which provides that the officer shall execute the writ upon the ''effects'' of the debtor and that ''This provision, as well as the other provisions hereafter referred to, should receive a liberal construction. (*First National Bank of Chicago v. Hanchett*, 126 Ill. 499; . . .) Its words are comprehensive enough to include the interest of a stockholder in a corporation.

''It will not be questioned that an attachment may be levied upon personal property. Section 7 of the general Incorporation act of this State provides that 'the

shares of stock . . . shall be deemed personal property.' Morawetz on Private Corporations says: 'In most of the States it is provided by general law that shares in a corporation shall be treated as personal property. . . . They have been held to be "personal property" subject to tax laws, and to pass as personal property under a will.' (Secs. 224, 225.) While shares, independently of the certificates of shares, cannot be considered as either goods, wares or merchandise within the meaning of the statute of frauds, yet certificates of shares may be considered goods and merchandise within the meaning of that statute."

From the quotation just made *certificates* of shares, as distinguished from *shares,* are considered goods and merchandise; so in the instant case the certificates of shares in the possession of a garnishee at the time process was served upon it may not only be considered "effects" of the judgment debtor, but also "goods and merchandise."

In *Illinois Anglo-American Storage Battery Co. v. Long,* 41 Ill. App. 333, it was held that shares of stock owned by the defendant in attachment, for which certificates had not been issued, might be reached by garnishment in the hands of the corporation, and their issuance and the disposition of them be controlled by the court. The court there said (p. 334): "The contention of appellant is that the court acquired no control over the stock by the process of garnishment, and was without jurisdiction to render the judgment," and that sec. 8 of the Attachment Act "authorized attachment of any equitable interest of goods, chattels, rights, credits, moneys and effects" of the debtor; that sec. 21 of the same chapter "provides for reaching by garnishment in the hands of any person, the property, effects . . . of the debtor in the possession or power of such person"; that sec. 5 of the Garnishment Act, chapter 62, "is equally comprehensive in the descrip-

tion of property interests belonging to the defendant
that may be reached in the hands of the garnishee.''
The court then discusses the case of *Union Nat. Bank
of Chicago v. Byram,* 131 Ill. 92; and referring to that
case the Appellate Court said (p. 335): ''It is there
said, 'effects' are defined to be 'property or worldly
substance,' and as denoting 'property in a more exten-
sive sense than goods . . . a share of stock cannot
be regarded as otherwise than property,' nor can it
be said that it is not 'worldly substance.'

''If, therefore, the certificates of stock when issued
are subject to attachment, it is difficult to see why
shares of stock owned by a defendant in attachment,
for which certificates have not been issued, may not be
reached by garnishment in the hands of the corpora-
tion, and their issuance and the disposition of them
controlled by the court.

''The certificate of stock is not the stock itself, but
evidence of its ownership. The assignment of such
certificates is the ordinary means of transferring
stock, and dealing with the shareholders' interest in
the corporation.''

The court then said that sec. 24 of the Garnishment
Act authorized the exercise of ''equitable powers in
taking possession and disposing of the property in the
hands of the garnishee.''

If, as held in that case, shares of stock of a judgment
debtor for which certificates have not been issued could
be reached by garnishment, we see no reason why
garnishment would not lie against one holding the
certificates after they had been issued to the judgment
debtor. In further support of this holding we refer
to section 1 of the Uniform Stock Transfer Act, ch. 32,
par. 229, which provides that the ''title to a *certificate*
and to the *shares* represented thereby can be trans-
ferred only (a) By delivery of the certificate endorsed,
or (b) By delivery of the certificate and a separate

document containing a written assignment'' of it. And that section further provides that the method of transferring certificates and the shares of stock in a corporation "shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation." Prior to the passage of that act it was held that under sec. 52, ch. 77, the delivery of a certificate of stock of a corporation in good faith, to one who advanced money on the security of it was sufficient to protect the holder against executions or attachments against the pledgor, to the extent of the debt the stock was delivered to secure, although the stock was not transferred on the books of the corporation. *Rice v. Gilbert,* 72 Ill. App. 649, same case affirmed, 173 Ill. 348.

In that case both the Supreme and Appellate Courts referred to section 52, chapter 77, of our statutes which provides, "The share or interest of a stockholder in any corporation may be taken on execution, and sold as hereinafter provided; but in all cases where such share or interest has been sold or pledged in good faith for a valuable consideration, and the certificate thereof has been delivered upon such sale or pledge, such share or interest shall not be liable to be taken on execution against the vendor or pledgor, except for the excess of the value thereof over and above the sum for which the same may have been pledged and the certificate thereof delivered." And it was held that where stock certificates were pledged as collateral security for an indebtedness, the interest of the shareholder in the corporation could not be sold under a judgment obtained against the owner of the shares until the indebtedness for which the certificates were pledged had been paid, although there was no no-

tation on the books of the corporation that the certificates had been pledged. In the instant case the certificates of stock were in the possession of the garnishee at the time of the service of summons on it, and the undisputed evidence is that after the garnishee was served the certificate for the 40 shares was returned to Alexander and the other certificate to Alexander and Bingham. The garnishee had no right to deliver up the certificates after it was served with process, and whatever interest Alexander had in the stock was subject to garnishment.

In *Pease v. Chicago Crayon Co.*, 235 Ill. 391, it was held that shares of stock in a corporation are personal property subject to levy under writ of attachment, and where certificates for the shares had been issued the interest of the stockholder could not be reached by garnishment against the corporation.

Counsel for the garnishee say that the method of subjecting a shareholder's interest in a corporation to judicial process was enacted by the legislature, as appears from sections 53, 54, 55, 56 and 57 of chapter 77 of our statutes; and that by section 54 it is provided that if the share or interest of a stockholder has not been previously attached the officer shall leave an attested copy of the execution with the clerk, treasurer or cashier of the corporation; and the argument seems to be that this is the only method by which the interest of a shareholder can be subjected to the payment of a judgment. But we think this provision is immaterial here because no levy has been attempted on the interest of the shareholder, Alexander. By the garnishment proceeding plaintiff was seeking to get possession of the stock certificates; and if it did so, whether it would then be required to make the levy, as pointed out in section 54, is not material because the garnishee surrendered the certificates after

it was served with process and is therefore liable for the value of the stock it surrendered.

Cases are cited from other jurisdictions by counsel which in effect hold that stock certificates cannot be reached by garnishment; they need not be discussed because we think they are contrary to the holding of our Supreme Court.

Plaintiff further contends that the surrender of the certificates of stock in the hands of the garnishee after the service of the garnishee summons, subjects the garnishee to a judgment for the amount of plaintiff's judgment. In support of this section 25 of the Garnishment Act, *Binkley v. Clay,* 112 Ill. App. 332, and other cases are cited.

Section 25 provides that if the garnishee refuses or neglects to deliver any goods, chattels or effects in his hands when required to do so by the court or officer having an execution, it may be attached and punished as for contempt, or the court may enter judgment for the amount of plaintiff's judgment and award execution thereon against the garnishee.

In *Binkley v. Clay,* 112 Ill. App. 332, it was held that it was the duty of the garnishee who has money or other property subject to garnishment in his hands at the time of the service of the writ upon him, to exercise reasonable diligence to prevent the payment of the money or the delivery of the property to the debtor; but whether the garnishee who had paid out money after he was served with garnishee summons was liable for the amount of plaintiff's claim or the amount of money that the garnishee had in his possession, was not discussed or considered.

*Stevens v. Dillman,* 86 Ill. 233, cited by counsel for both parties, was a garnishment proceeding where a plaintiff had a judgment against the principal defendants for $5,154 and then brought garnishment; the garnishee held two $1,000 promissory notes of a third

person indorsed in blank and belonging to one of the principal defendants, and after service of garnishee summons surrendered one of the notes. The court gave judgment against the garnishee for $1,151.90, being the face and interest of the note surrendered, and ordered the other note surrendered within 30 days. On appeal to the Supreme Court the judgment was affirmed. The court there said (p. 235) : ''Stevens held these notes when garnishee process was served on him; and he must have known that it was to reach these notes that he was served. And he should have also known that it was his duty to hold them until the title thereto was determined. The very fact that he was served with process put him on his guard, and he afterwards acted at his peril in surrendering the note to Ward, or in delivering it to Scutt under his directions. When he did so he undertook to prove that the note belonged to Ward. This he attempted, but in it he failed; and, failing in that, he must be held liable for the value of the note.''

In the instant case plaintiff, on the trial, took this same view of the law because a witness was called and over objection testified that the stock was worth $25 a share. This testimony was objected to because the witness had shown no qualification, nor had any facts been adduced to show the value of the stock. The evidence was clearly inadmissible and should have been excluded. *People v. Turpin,* 233 Ill. 452. The fact that the witness had been one of the original incorporators did not tend to show the value of the stock. This might be shown by actual bona fide sales of the stock or by other methods well known to the profession. There was no competent evidence to show the value of the stock.

But the garnishee contends that where, as here, it was under duty to return the property to the joint obligees, Alexander and Bingham, the property was

not subject to garnishee proceedings based upon a judgment against one of the obligees, that is, the judgment against Alexander. And in support of this the case of *Commercial Nat. Bank v. Kirkwood,* 184 Ill. 139, and other cases are cited. In that case, following the rule laid down in *Siegel, Cooper & Co. v. Schueck,* 167 Ill. 522, it was held that a debt owing to one partner is not subject to garnishment by creditors of the partners. But after those cases were decided the Legislature amended section 1 of the Garnishment Act in 1923. (*Boska v. Buchaniec,* 245 Ill. App. 602.)

Plaintiff had a right to garnishee whatever interest Alexander had in the stock pledged. *Obergfell v. Booth,* 218 Ill. App. 492.

Moreover, as above stated, the court found from the evidence and the admissions of the garnishee, that after it was served with summons it return the certificate for the 40 shares of stock to Alexander. In these circumstances we think the garnishee was liable for the reasons stated.

For the errors mentioned the judgment of the municipal court of Chicago is reversed and the cause is remanded.

*Reversed and remanded.*

McSurely, P. J., concurs.

Matchett, J., dissents.